**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| Sandy Karacsony and Tracy Albert, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WWF OPERATING COMPANY <br><br> Defendant. | Case No. 15-cv-04870 <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Tracy Albert and Sandy Karacsony ("Plaintiffs"), by and through their undersigned counsel, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

### SUMMARY

1.      Plaintiffs bring this consumer class action against WWF Operating Company ("WhiteWave" or "Defendant") on behalf of themselves and all other persons in the United States who, from May 27, 2009, up to and including the present (the "Class Period"), purchased for consumption and not resale any of WhiteWave's almond milk labeled products.

2.      During the Class Period, Defendant engaged in a uniform campaign through which it purposefully misrepresented and continues to purposefully misrepresent to consumers that its almond milk labeled products are primarily made from almonds, when in fact, said products contain only 2% of almonds.

3.      Defendant's actions constitute deceptive acts and practices in violation of § 349 of New York General Business Law, as well as those similar deceptive and unfair practices and/or

consumer protection laws in other states. Defendant's actions also constitute false advertising in violation of § 350 of New York General Business Law, as well those similar false advertising laws in other states, fraud, and unjust enrichment.

4. As a result of these unfair and deceptive practices, WhiteWave has collected billions of dollars from the sale of its almond milk labeled products that they would not have otherwise earned but for its deceptive acts and practices.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Sandy Karacsony is a citizen of the State of New York. From June of 2010 through May 2015, Ms. Karacsony purchased several varieties of WhiteWave Silk almond milk labeled products for personal consumption for her and her family. Said almond milk products where purchased at various grocery stores located within the State of New York, but primarily at Stop and Shop.

6. Plaintiff Tracy Albert is a citizen of the State of California. From approximately January 2012 through May 2015, Ms. Albert purchased several varieties of WhiteWave Silk almond milk labeled products for personal consumption. Said almond milk products where purchased at various grocery stores located within the State of California, but primarily at Vons.

7. Defendant Whitewave is a publicly traded Delaware corporation (NYSE: WWAV), with its principal place of business in Broomfield, Colorado. WhiteWave is a consumer packaged food and beverage company that manufactures, markets, distributes, and sells branded foods and beverages, coffee creamers, dairy products and organic produce throughout North America and Europe. Whitewave was formerly a subsidiary of Dean Foods, and was spun off in an IPO announced in August 2012.

2

8. Whatewave brands distributed in North America include Horizon Organic premium dairy and pantry products, Silk and SO Delicious plant-based foods and beverages, Earthbound Farm organic produce and International Delight and Land O'Lakes coffee creamers and beverages. WhiteWave's European brands of foods and beverages include Alpro and Provamel.

9. WhiteWave is one of the two largest manufacturers of almond milk labeled products in the United States. WhiteWave sells its almond milk labeled products to consumers through grocery and other retail stores throughout New York and the United States.

10. WhiteWave manufactured, advertised, marketed, and sold almond milk labeled products to tens of thousands of consumers nationwide, including New York.

11. The Court has jurisdiction over Defendant because its almond milk labeled products are advertised, marketed, distributed, and sold throughout New York; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York; Defendant is authorized to do business in New York; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within this state.

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.     Venue is proper in this district because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

14.     Almond milk is a drink made from ground almonds, frequently used as a substitute for dairy milk, and has been known to be prepared and consumed as far back as the 5th century.  *See* http://en.wikipedia.org/wiki/Almond_milk; *see also* http://silk.com/products/learn-more/about-almondmilk.

15.     The basic method of modern domestic almond milk production is to grind soaked almonds in a blender with water and honey (or any other sweetener), then strain out the almond pulp (flesh) with a strainer, cheesecloth, or nut milk bag.  *Id*.

16.     Upon an extensive review of the recipes for almond milk on the internet, the vast majority of the recipes call for one part almond and three or four parts water, amounting to 25-33% of almonds.

17.     "In the United States, almond milk remained a fairly niche health food item until the early 2000s, when its popularity began to increase. In 2011 alone, almond milk sales increased by 79%....In 2013, it surpassed soy milk as the most popular plant-based milk in the U.S." *Id*.

18.     The almond milk industry is currently generating over $700 million in sales of almond milk with Blue Diamond Growers and WhiteWave generating the vast majority of the sales. *See* "America's Almond Milk Boom Tops $700 Million in Sales", Venassa Wong, August 8, 2014, Bloomberg.com, at http://www.bloomberg.com/bw/articles/2014-08-08/the-almond-milk-boom-silks-huge-sales-lead-the-way-trounce-soy.

19.     WhiteWave is selling products that are branded as almond milk, and leading people to believe that the products are made primarily from almonds when the products only contain 2% of almonds.

20.     WhiteWave sells a variety of "almond milk" labeled products, described on its website at http://silk.com/products?category=130:



21. During the Class Period, WhiteWave described its Silk Almond Milk as being "almondmilk" and "PureAlmond." WhiteWave also displayed a significant number of almonds on its almond milk containers, leading consumers to believe that its almond milk products are primarily made from almonds. WhiteWave further described its Silk Almond Milk as "100% mouth-watering almond deliciousness" on its packaging for non-refrigerated almond milk.

 

22.     Upon and information and belief, within the past year, WhiteWave toned down the misleading statements on the packaging of its almond milk labeled products by dropping the PureAlmond name and no longer stating that the almond milk is "100% mouth-watering almond deliciousness." However, WhiteWave's new packaging is still misleading and leads consumers to believe that its almond milk is primarily made from almonds by stating that the product is "almondmilk", displaying a significant amount of almonds on the packaging, and by stating on its packaging that, by drinking the almond milk, consumers will "Discover the tempting taste of almonds."

 

23.    Furthermore, WhiteWave continues to lead consumers to believe that its almond milk labeled products are primarily made from almonds by stating on its website:



## It all begins with the *tasty little almond*

We'd like to say we're responsible for the amazing taste of **Silk**® **Almondmilk**. But most of the credit goes to, well, the almonds. One sip and you'll see what we mean.



### A mouthwateringly simple story

Our delicious almondmilk starts with Non-GMO verified almonds grown in California. Only nuts that match our stringent standards for size, density and color make the cut. The winners are shelled, toasted and ground before being blended with pure filtered water, along with other ingredients like vitamins, minerals and a touch of natural flavor. Simple, isn't it? And simply impossible to resist.

### Go nuts, without the guilt

With a mildly nutty taste and a calorie count that isn't nutty at all, our almondmilk is perfectly poised to become your cereal's new best friend. Plus it's a smart swap for milk in recipes or shakes. Every delicious glass packs 50% more calcium than dairy milk,[1] with absolutely no cholesterol and no saturated fat. That's what we call the power of plant-based nutrition!

### Why didn't we think of almondmilk ages ago?

The truth is that taste pioneers recognized the versatility and goodness of almondmilk as early as the fifth century, when almondmilk was consumed all the way from ancient Spain to Eastern Asia. So you might think of Silk® as the newest branch of the almondmilk family tree.

*See* http://silk.com/products/learn-more/about-almondmilk.

24.    WhiteWave also makes the following health claims on its website to further lead consumers to believe that its almond milk labeled products are primarily made from almonds:



## Why eat *(& drink)* more plants

Move over, meat. Or at least scoot over a little and make some room—our veggie friends are eyeing center plate. That's because more and more people are recognizing the benefits of meals based on fruits, vegetables, nuts and grains. Plus, consuming more plants can be easier on the earth, too.



### Eat to your health

Nothing says you have to go vegan, or even vegetarian. Burger lovers and bean lovers—we love 'em all! But the benefits of a plant-based diet are well documented. And the good news is that improving your diet can be as easy as slipping in an extra serving or two of fruit, veggies, nuts or soy every day.

A plant-based diet rich in fruits, vegetables, nuts, whole grains and meat substitutes (like soy) may reduce mortality from heart disease[1] and lower the incidence of high cholesterol[2,3] and diabetes.[4]

Silk® can be a great place to begin. Try delicious soymilk, almondmilk or coconutmilk instead of your usual dairy milk in cereal, or pack a tempting Fruity & Creamy dairy-free yogurt alternative for lunch. It could be the start of a deliciously smart new habit.

*See* http://silk.com/healthy-living/plant-based-diet.

25.    Unbeknownst to consumers, Defendant's "almond milk" labeled products are not primarily made from almonds.

26.    Instead, the so called "almond milk" is being made from various types of thickening agents, such as locust bean gum, gellan gum, xanthan gum, and carrageenan, which

are less costly ingredients, and Defendant's almond milk labeled products only contain 2% of almonds.

27.    In addition, some of these ingredients have been linked to cancer and digestive problems, and consumers are unknowingly ingesting massive quantities of these ingredients. "Harmful or Harmless: Guar Gum, Locust Bean Gum, and More," Chris Keeser, December 13, 2013, ChrisKesser.com.   Indeed, WhiteWave has recently announced that it was removing carrageenan from its products.   *See* "Controversial Ingredient To Be Removed From Silk Beverages", August 19, 2014, Huffingtonpost.com.

28.    The discovery that Defendant's "almond milk" actually contains just 2% of almonds first came to light on April 20, 2015, when Ryan Gormon, a reporter from BusinessInsider.com, issued the following article titled "Here's what happened when I started asking the almond industry about the ingredients in almond milk":

*A simple question sent me on a bizarre journey.*

*I knew that a standard serving of almond milk contains a fraction of the nutritional value found in a serving of almonds.*

*So I wanted to find out just how many almonds are actually in a carton of almond milk.*

*Two major almond companies, Blue Diamond and Califia, declined to reveal the exact amount of almonds in their milk (despite repeated assurance that I was not writing about the California drought).*

*A series of phone calls and emails between Blue Diamond and a PR firm representing Califia ended when Blue Diamond referred me to a trade group called the Almond Board of California and Califia declined to answer my question due to the proprietary nature of their almond milk formula.*

*I then spoke with Almond Board of California spokeswoman Carissa Sauer, who couldn't (or wouldn't) tell me how many almonds are used to make commercial almond milk.*

*"I will talk to the group," she said, assuring she would call me back.*

*She never called back.*

*About 20 minutes later, I got an email from the Almond Board about a late-afternoon press conference scheduled "to add sorely-needed facts and context to the recent discussion around California's drought."*

*Richard Waycott, who heads up the Almond Board, spoke at length about various things related to the drought and how almonds have or have not affected the state's water supply. But he did not mention almond milk.*

*I asked point-blank: "How many almonds are in the average half-gallon container of almond milk?"*

*Waycott gave a rambling answer about different producers and varying formulas before referring me back to the almond companies.*

*I pressed him: "But [Blue Diamond] referred me to you ... [because] the formulas are fairly standardized across the board."*

*Waycott said, "That's interesting, because we really don't have that knowledge."*

*No one knew exactly what is in a carton of almond milk.*

*Sauer emailed me back hours later to suggest I check product labels in the UK. She said nutrition labels there tend to be more detailed and "the ingredient combinations are pretty similar."*

*One brand of British almond milk, I finally found out, contains just 2% almonds per carton. The remainder is water, vitamins, and thickening agents.*

29.    Upon further investigation, Plaintiff's counsel discovered that the almond milk labeled product sold in the United Kingdom, that actually discloses on the packaging that the beverage contains just 2% of almonds, is called Alpro, which is the brand name that WhiteWave uses to sell its almond milk labeled products in Europe.

30.    Alpro's website also discloses that its almond milk labeled product contains only 2% of almonds.

11

31. So Defendant disclose to consumers in the United Kingdom that its almond milk labeled products contain 2% of almonds but does not disclose that to consumers in the United States.

32. Upon information and belief, Defendant WhiteWave uses the same deceptive practices in selling soy milk, coconut milk, and cashew milk branded products in that said products contain a tiny fraction of the plant-based ingredient being advertised that the drink is made from, and is really made from less costly thickening agents.

33. Defendant is using its website to lead distributors, grocery stores, restaurants, consumers and other buyers and resellers of almond milk in the United States to believe that its almond milk branded products are primarily made from almonds. Said information from Defendant's websites has created a false perception amongst the public that Defendant's almond milk labeled products are premium products that are healthy for you because they are primarily made from almonds.

34. Plaintiff Sandy Karacsony purchased Silk branded almond milk for consumption under the impression that the almond milk labeled product was primarily made from almonds. Her decision to purchase said almond milk labeled product was based on the statements and claims on the packaging of the said product and information in the marketplace that almond milk was healthy and a premium product because it was primarily made from almonds.

35. Plaintiff Tracy Albert purchased Silk branded almond milk for consumption under the impression that the almond milk labeled product was primarily made from almonds. Her decision to purchase said almond milk labeled product was based on the statements and claims on the packaging of the said product and information in the marketplace that almond milk was healthy and a premium product because it was primarily made from almonds.

36.    As a result of the deceptive acts and practices described herein, Plaintiffs have been damaged in that they did not receive the product they were led to believe that they were paying for.

37.    If Plaintiffs knew that Defendant's almond milk labeled products contained only 2% of almonds, they would have not have purchased said products.

## CLASS ACTION ALLEGATIONS

38.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on behalf of the following class:

> All persons in the United States who purchased Defendant's almond milk labeled products described herein for consumption, during the period between May 27, 2009 and the date of the final disposition of this action, and/or such class or subclass as the Court may deem appropriate (the "Class").

39.    Plaintiffs also bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on behalf of the following sub-class:

> All persons in the State of New York who purchased Defendant's almond milk labeled products described herein for consumption, during the period between May 27, 2009 and the date of the final disposition of this action, and/or such class or subclass as the Court may deem appropriate (the "Class").

40.    Plaintiffs reserve the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

41.    Plaintiffs reserve the right to establish further sub-classes as appropriate.

42.    This action is brought and may properly be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

43.    There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

44.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiffs believe that the Class includes tens of thousands of members.  Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

45.    Plaintiffs' claims are typical of the claims of the members of the Class whom they seek to represent because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

46.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who is competent and experienced in handling complex class action litigation on behalf of consumers.

47.    A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

14

a) The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

b) If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

c) Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

48.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

49.     The common questions of fact include, but are not limited to, the following:

a) Whether a beverage can be branded or labeled as almond milk without disclosing that the beverage contains 2% of almonds;

b) Whether the statements on Defendant's packaging would lead a reasonable consumers to believe that its products were primarily made from almonds;

c) What the costs of almonds are;

d) The cost of the thickening agents which Defendant's almond milk is being made from;

e) The cost savings by Defendant for making its almond milk primarily from thickening agents as opposed to almonds;

f) Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

g) Whether Defendant engaged in fraud, false advertising, deceptive trade practices, or other unlawful acts;

h) Whether Defendant was unjustly enriched; and

i) Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

50.    In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

51.    Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### Violations Of New York General Business Law § 349 And Similar Deceptive and Unfair Practices Laws Of Other States

52.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs and further alleges as follows:

53.    This is a claim for violation of New York General Business Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states.

54.    Defendant violated these laws by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, the practices employed by Defendant,

16

whereby it advertised, promoted and marketed that its almond milk labeled products were primarily made from almonds when they were made from thickening agents are unfair, deceptive, and misleading.

55.    Moreover, a reasonable consumer would be misled by Defendant's conduct.

56.    Plaintiff and the Class members relied on Defendant's actions described herein to their detriment.

57.    Plaintiffs and the Class are aggrieved and have suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Defendant's almond milk labeled products by not receiving the product that they were led to believe that they were paying for.  The harm suffered by Plaintiffs and the consumers in the Class was directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.

58.    Plaintiff and the Class members relied on Defendant's actions described herein to their detriment.

59.    Plaintiffs and the proposed class members seek damages for the harm suffered.

60.    Plaintiffs also seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant as well as restitution and disgorgement.

61.    Plaintiff also seeks an order awarding attorneys' fees pursuant to General Business Law 349(h), and similar state statutes.

17

## COUNT II

### Violations Of New York General Business Law § 350
### And Similar False Advertising Laws Of Other States

62.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs and further alleges as follows:

63.    This is a claim for violation of New York General Business Law § 350, as well those similar false advertising laws in other states.

64.    Defendant violated these laws by advertising, promoting and marketing its almond milk labeled products as primarily being made from almonds when they only contain 2% of almonds and are made from various thickening agents.

65.    Plaintiffs and the Class are aggrieved and have suffered a loss as a result of Defendant's false advertising. Specifically, as a result of Defendant's false advertising, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Defendant's almond milk products by not receiving the product that they were led to believe that they were paying for. The harm suffered by Plaintiffs and the consumers in the Class was directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.

66.    Moreover, a reasonable consumer would be misled by Defendant's conduct.

67.    Plaintiff and the Class members relied on Defendant's actions described herein to their detriment.

68.    Plaintiffs and the proposed class members seek damages for the harm suffered.

69.    Plaintiffs also seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant as well as restitution and disgorgement.

70.     Plaintiff also seeks an order awarding attorneys' fees pursuant to General Business Law 350(e)(3), and similar state statutes.

## COUNT III

### Fraud

### (On Behalf of Plaintiffs Only and Not the Members of the Proposed Class)

71.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs and further alleges as follows:

72.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs.

73.     In making the representations of fact to Plaintiffs, Defendant have failed to fulfill its duties to disclose the material facts set forth above.

74.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true.

75.     Defendant made and intended the false representations to induce the reliance of Plaintiffs.

76.     Plaintiffs relied upon these false representations and nondisclosures by Defendant when purchasing Defendant's almond milk labeled products, which reliance was justified and reasonably foreseeable.

77.     As a result of Defendant's wrongful conduct, Plaintiffs have suffered economic losses and other general and specific damages as described herein.

78.     Plaintiffs are entitled to punitive damages for Defendant's false representations.

## COUNT IV

### Unjust Enrichment

79.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs and further alleges as follows:

80.    By its wrongful acts and omissions, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class, who did not receive the product that they were led to believe that they were purchasing, and thus Plaintiffs and members of the Class were unjustly deprived of money provided to Defendant.

81.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from its deceptive, misleading, unfair and unlawful conduct alleged herein.

82.    Plaintiffs and members of the Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## RELIEF REQUESTED

Accordingly, Plaintiffs, on behalf of themselves and the members of the Class, seek judgment as follows:

1.    Certifying the Class as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2.    Ordering that Defendant are financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

3.    Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Class;

5.     Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful or unlawful;

6.     Awarding to Plaintiffs and the Class punitive damages;

7.     Ordering Defendant to engage in corrective advertising;

8.     Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.     Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class demand a trial by jury as to all matters so triable.

Dated: June 23, 2015

James C. Kelly
**The Law Office of James C. Kelly**
244 5th Avenue, Suite K-278
New York, New York 10001
Tel: 212-920-5042
Fax: 888-224-2078
Email: jkelly@jckellylaw.com

*Attorney for Plaintiffs and the Proposed Class*

21